Filed 1/15/21

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ALICE JEANNE BORMAN, | D076239, D076748 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2017-00050352-CU-MM-NC) |
| TARA BROWN et al., | |
| Defendants and Respondents. | |

APPEALS from a judgment and order of the Superior Court of San Diego County, Timothy M. Casserly, Judge. Reversed.

Markowitz Law Group and Aaron B. Markowitz for Plaintiff and Appellant.

Lotz, Doggett & Rawers, Jeffrey S. Doggett, Patrick F. Higle and Brian T. Bloodworth for Defendants and Respondents.

I.

INTRODUCTION

Alice Jeanne Borman filed this action against defendants Tara Brown, M.D. and North County Eye Center, Inc. (NCEC). In her complaint, Borman alleged that she sought treatment from defendants for a "droopy eyelid and brow." According to Borman, Dr. Brown told Borman that Brown could

perform a "brow lift"[1] to correct the problem, but that a brow lift would *not* be covered by Borman's insurance. Borman further alleged that Dr. Brown told Borman that she could instead perform a blepharoplasty,[2] which *would* be covered by Borman's insurance. Borman further claimed that Dr. Brown's statement that a brow lift would not be covered by Borman's insurance was false and that Dr. Brown had no reasonable basis for making the statement. Borman alleged that she relied on Dr. Brown's representations and agreed to undergo a blepharoplasty. After undergoing the blepharoplasty, Borman claimed that she continued to have physical difficulties with her eyelid and her brow. Borman consulted another doctor who advised Borman that Dr. Brown had "performed the wrong procedure and that a brow[ ]lift should have been performed instead." Borman brought causes of action styled as professional negligence, lack of informed consent, fraud and deceit, and battery against defendants.

Defendants filed a motion for summary judgment or, in the alternative, summary adjudication. The trial court denied the motion for summary judgment, denied the motion for summary adjudication of the professional negligence and lack of informed consent causes action, but granted the motion for summary adjudication as to Borman's fraud and deceit and battery causes of action. After a defense jury verdict on the professional

---

[1]    A brow lift, or brow ptosis repair, is a surgical procedure designed to elevate the position of an eyebrow.

[2]    A blepharoplasty, or eye lift, is a surgical procedure during which excess eyelid skin is removed.

2

negligence and lack of informed consent causes of action,[3] the trial court entered judgment in favor of defendants. The court subsequently entered an order awarding costs to defendants as prevailing parties.

On appeal, Borman contends that the trial court erred in granting defendants' motion for summary adjudication with respect to her fraud and deceit cause of action, because the trial court should have permitted her to "proceed at trial on a claim for '[n]egligent [m]isrepresentation.' " Among other arguments, Borman maintains that she adequately alleged both intentional *and* negligent misrepresentation theories of liability in her fraud and deceit cause of action, and that the trial court erred in concluding that Dr. Brown demonstrated as a matter of law that Borman would be unable to establish one of the elements of *negligent* misrepresentation. Specifically, Borman claims that the trial court erred in concluding that there was "no triable issue of fact on the issue of intent to induce reliance." Borman argues that the trial court erroneously treated the "intent to induce reliance" element of her *negligent* misrepresentation theory of liability as if Borman were required to demonstrate an "intent to *defraud*," (italics added) which is *not* an element of *negligent* misrepresentation.

We conclude that the record contains evidence from which a reasonable jury could find that Dr. Brown intended for Borman to rely on her statement that a brow lift would not be covered by Borman's insurance. No more was required for Borman to prove the "intent to induce reliance" element of her

---

[3] On the verdict form, the jury found that Dr. Brown had not been "negligent." Lack of informed consent is a "form of professional negligence." (*Bigler-Engler v. Breg, Inc.* (2017) 7 Cal.App.5th 276, 322.) Although the jury instructions are not contained in the record, from the trial testimony and the jury instruction conference, it appears that the trial court instructed the jury on lack of informed consent.

fraud and deceit cause of action premised on negligent misrepresentation. Since this is the sole element of a negligent misrepresentation theory of liability that the trial court found Borman would be unable to prove, we further conclude that the trial court erred in granting summary adjudication of Borman's fraud and deceit cause of action.[4]

Borman also claims that the trial court's refusal to modify certain jury instructions demonstrates that she was unable to present her fraud and deceit / negligent misrepresentation cause of action at trial and that the court erred in excluding the testimony of an expert who would have testified with respect to that cause of action. For reasons that we explain in parts III.B and C, *post*, we do not address these claims given our reversal and remand for further proceedings on Borman's fraud and deceit cause of action insofar as that cause of action pled a claim for negligent misrepresentation. Borman also appeals from a postjudgment order awarding defendants' costs. As we explain in part III.D, *post*, our reversal of the judgment necessitates a reversal of the costs award.

Accordingly, we reverse the judgment, the postjudgment cost order, and the order granting summary adjudication of Brown's fraud and deceit cause of action. We remand the matter for the limited purpose of conducting further proceedings on Brown's fraud and deceit cause of action insofar as that cause of action pled a claim for negligent misrepresentation and any necessary ancillary proceedings.[5]

---

[4] In reaching this conclusion, we also reject several additional alternative grounds for affirmance that defendants offer on appeal. (See part III.A.3.d, *post*.)

[5] In reversing and remanding, we emphasize that we express no opinion as to whether Borman will ultimately be able to establish at trial defendants'

II.

PROCEDURAL BACKGROUND

A. *The complaint*

In December 2017, Borman filed a complaint against defendants alleging causes of action styled as professional negligence, lack of informed consent, fraud and deceit, and medical battery. As discussed in greater detail in part III.A, *post*, the fraud and deceit cause of action contained allegations supporting both intentional and negligent misrepresentation theories of liability.

B. *Defendants' motion for summary judgment / adjudication*

Defendants filed a motion for summary judgment, or in the alternative, motion for summary adjudication with respect to each cause of action in November 2018, as discussed in detail in part III.A.2.b, *post*. A few months later, the trial court denied defendants' motion for summary judgment, but granted summary adjudication of Borman's causes of action for fraud and deceit and battery.

C. *Pretrial proceedings*

1. *Jury instructions*

Prior to the trial, Borman filed a brief regarding proposed jury instructions. In her brief, Borman requested that the trial court instruct the jury pursuant to CACI No. 1903,[6] a standard jury instruction outlining the

---

liability on her fraud and deceit cause of action premised on a negligent misrepresentation theory.

[6] Borman's brief referred to CACI No. *1905*, but it is clear that Borman intended to refer to CACI No. *1903*, the standard jury instruction on negligent misrepresentation. In opposing Borman's request, defendants requested that the court "exclude CACI No. 1903, negligent misrepresentation."

5

elements of negligent misrepresentation. Borman argued that "the claim for negligent misrepresentation was *not* dismissed at summary adjudication—the claim for fraud (i.e. intentional misrepresentation) was dismissed." (Italics added.) Borman also argued that her *negligence* cause of action sufficiently stated a claim for negligent misrepresentation, but that to the extent the court concluded otherwise, she should be granted leave to amend. Borman also requested that the trial court provide modified versions of the standard CACI instructions on lack of informed consent.[7]

Defendants filed a brief in opposition to Borman's requests. With respect to Borman's request that the court instruct the jury on negligent misrepresentation pursuant to CACI No. 1903, defendants argued, "C[ACI] No. 1903 pertains to a cause of action that has already been summarily adjudicated in favor of defendants." (Some capitalization omitted.) Defendants further contended that the standard lack of informed consent instructions were appropriate for this case.

Prior to trial, the court rejected Borman's argument that her negligence cause of action contained a claim for negligent misrepresentation and denied Borman's request to amend her complaint to state a cause of action based on negligent misrepresentation:

> "Court hears argument regarding briefs filed today's date regarding CACI 190[3] - Negligent Misinformation [*sic*]- The Court determines Negligent Misinformation [*sic*] to be it's [*sic*] own cause of action and will not allow [Borman] to amend the complaint."

---

7  Borman's brief argued that "the instructions on informed consent should parallel the claims being made as far as what information [Borman] claims was lacking when [Dr. Brown] was obtaining informed consent from [Borman]." The record does not contain Borman's requested instructions.

During the trial, the court denied Borman's request to instruct the jury pursuant to modified lack of informed consent instructions.[8] The trial court also denied Borman's request to instruct the jury pursuant to CACI No. 1903 on negligent misrepresentation.

### 2. *Defendants' motions in limine to preclude Borman's designated expert, Jacqueline Bloink, from testifying at trial*

Defendants filed two motions in limine to preclude Borman's designated medical insurance claims expert, Jacqueline Bloink, from testifying at trial. Defendants argued that Bloink's experience lay in reviewing medical records and in determining "what is billable and what is not billable." Defendants argued that Bloink was unqualified to testify as to the professional negligence cause of action that remained in the case, and that her testimony would be irrelevant and prejudicial. Defendants also filed a third motion in limine in which they argued that, to the extent the trial court permitted Bloink to testify, the court should preclude her from testifying as to Borman's medical records, on hearsay grounds.

Borman filed oppositions to each of the three motions in limine. Among other arguments, Borman claimed that Bloink's testimony was relevant in assisting the jury in determining whether Dr. Brown "negligently misrepresent[ed] a material fact to [Borman]."

After a hearing, the trial court granted defendants' request to preclude Bloink from testifying at the trial.

---

8    As noted in footnote 7, *ante*, Borman's requested instructions are not in the record.

7

D. *The jury trial*

The trial court held a jury trial on Borman's professional negligence (i.e., medical malpractice) and lack of informed consent causes of action in April 2019. The jury returned a unanimous verdict in favor of defendants.

E. *The appeal*

Borman timely filed an appeal from the judgment and timely filed a second appeal from the postjudgment order awarding costs. We consolidated the appeals.

III.

DISCUSSION

A. *The trial court erred in granting summary adjudication of Borman's fraud and deceit cause of action insofar as that cause of action pled a claim for negligent misrepresentation*

Borman claims that the trial court erred in granting summary adjudication of her fraud and deceit cause of action insofar as that cause of action pled a claim for negligent misrepresentation.[9] "We review a decision

---

[9] In her opening brief, Borman styled this claim as, "It was error for the trial court to refuse to allow [Borman] to proceed at trial on a claim for 'negligent misrepresentation.'" (Boldface & some capitalization omitted.) In presenting this claim, Borman specifically argued that the trial court erred in granting defendants' motion for summary adjudication of Borman's fraud and deceit cause of action, stating, "[T]he [t]rial [c]ourt should not have adjudicated [Borman's] [t]hird [c]ause of [a]ction [for fraud and deceit], and . . . should have allowed [Borman] to go forward with a cause of action for [d]eceit based on [n]egligent [m]isrepresentation."

While defendants stated that they were "unsure as to whether [Borman] is challenging the trial court's order granting summary adjudication of the third cause of action for fraud and deceit," defendants' brief responded on the merits to such a claim. Indeed, defendants' brief contains a section titled, "The trial court properly summarily adjudicated [Borman's] third cause of action for fraud and deceit." (Boldface & some capitalization omitted.)

8

granting summary adjudication de novo." (*Sharufa v. Festival Fun Parks, LLC* (2020) 49 Cal.App.5th 493, 497.)

    1.   *The law governing summary adjudication*

A party is entitled to summary adjudication of a cause of action if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subds. (c) & (f)(1).) "A motion for summary adjudication shall be granted only if it completely disposes of a cause of action . . . ." (*Id.*, subd. (f)(1).) A defendant is entitled to summary adjudication of a cause of action if she demonstrates that the plaintiff cannot establish one or more elements of the cause of action. (*Id.*, subd. (p)(2).)

A court considering a motion for summary adjudication must view the evidence and reasonable inferences from the evidence in the light most favorable to the opposing party, as on a motion for summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

On appeal, "[i]n reviewing a summary adjudication, 'we apply the same three-step analysis required of the trial court: We first identify the issues framed by the pleadings, since it is these allegations to which the motion must respond. Secondly, we determine whether the moving party has established facts which negate the opponents' claim and justify a judgment in the movant's favor. Finally, if the summary judgment motion prima facie justifies a judgment, we determine whether the opposition demonstrates the existence of a triable, material factual issue.' " (*Butte Fire Cases* (2018) 24 Cal.App.5th 1150, 1161–1162.)

---

Accordingly, we conclude that Borman raised this claim, as we have formulated it in the text, on appeal.

2. *Factual and procedural background*

    a. *Borman's complaint*

In the general allegations portion of her complaint, Borman alleged:

> "[Borman] sought treatment with [d]efendants for a droopy eyelid and brow, which was causing [Borman] problems with her vision. At the consultation with [Dr. Brown], [Dr. Brown] advised [Borman] that she could perform a brow[ ]lift to correct the problem, but told [Borman] that a brow lift would not be covered by [Borman's] insurance. [Dr. Brown] further advised [Borman] that she could instead perform a 'right upper lid [b]lepharoplasty,' which would be covered by insurance.
>
> "[Borman] contends that at the time that [Dr. Brown] told [Borman] that a brow[ ]lift would not be covered by [Borman's] insurance, that [Dr. Brown] had no reasonable basis to believe this was true, and this statement was in fact not true. [Borman] further contends that [Dr. Brown] made this false statement for the purpose of getting [Borman] to instead consent to the more complicated and more expensive procedure.
>
> "As [Borman] could not afford a procedure that was not covered by insurance and she trusted [Dr. Brown], [Borman] relied on [Dr. Brown's] representations about what would and what would not be covered by insurance and consented to the [b]lepharoplasty. Had [Borman] been aware of the true fact that the brow[ ]lift would be covered by insurance, [Borman] would not have consented to the [b]lepharoplasty."

In the fraud and deceit cause of action, Borman alleged:

> "As discussed above, [Dr. Brown] made misrepresentations to [Borman] that she knew to be false and/ or had no reasonable basis to believe to be true, and she failed to disclose information to [Borman] that [Dr. Brown] knew was critical to [Borman's] decision making, all with the intention of misleading [Borman], and [Borman] relied on the information as disclosed to her by [Dr. Brown].

10

" . . . As a direct and proximate result of Defendants' fraud and deceit as discussed herein, [Borman] has been injured, has suffered damages, and continues to suffer damages, and as a result [Borman] is entitled to recover those damages."

### b. *Defendants' motion for summary adjudication*

#### i. *Defendants' motion*

In their motion for summary adjudication, defendants argued:

" 'A complaint for fraud must allege the following elements: (1) a knowingly false representation by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages. [Citations.]  Every element must be specifically pleaded. [Citations.]' "

Defendants argued that they were entitled to summary adjudication for two reasons.  First, defendants claimed that "Dr. Brown did not make a knowingly false representation to [Borman]."  (Boldface & some capitalization omitted.)  Specifically, defendants argued that "Dr. Brown told [Borman] that she could . . . do a brow lift, but the brow lift would *likely* not be covered by insurance." (Italics added, some capitalization omitted.)  Defendants argued further that Borman had no evidence to show that Dr. Brown was incorrect in stating that "insurance would *likely* not have covered a brow lift . . . ."  (Italics added.)

Alternatively, defendants claimed, "Even if Dr. Brown made a false representation, [Borman] cannot prove it was intentionally made to *deceive*." (Italics added, some capitalization omitted.)  In support of this contention, defendants argued that Dr. Brown had no incentive for inducing Borman to undergo a blepharoplasty instead of a brow lift, since Dr. Brown "would have earned more money doing a brow lift instead of a blepharoplasty."  Thus,

11

defendants claimed that Borman would be unable to demonstrate that Dr. Brown "tried to induce reliance on an alleged misrepresentation."

Defendants supported their motion with Borman's medical records and excerpts of Dr. Brown's and Borman's depositions, among other documents.

### ii. Borman's opposition

In her opposition, Borman pointed out that, in order to establish her fraud and deceit cause of action by way of deceit, "Defendant does not have to *know* that the fact is not true to constitute a deceit, but rather has to believe that it is untrue, or *lack a reasonable ground* for believing it to be true." (Second italics added.)  Borman argued that there was a triable issue of fact with respect to whether Dr. Brown falsely stated that a brow lift would not be covered by Borman's insurance without having a reasonable basis for making such a statement as follows:

> "Dr. Brown told Ms. Borman that a brow lift would not be covered by her insurance when she knew that insurance coverage was a critical consideration for Ms. Borman. [Citation.]  As explained by [Borman] and [Borman's] expert, Dr. [Eric] Ahn, and as supported by the testimony of a representative from Sharp Community Medical Group, which manages [Borman's] insurance [citation], and the applicable coverage determination guidelines for the subject procedure [citation], [Borman's] insurance would have covered a brow lift had Dr. Brown done the appropriate documentation of the need for the procedure and submitted it to the insurance company for approval. Dr. Brown did not do this, but instead told [Borman] that the insurance would not cover the procedure.  This was not a true statement and Dr. Brown did not have a reasonable ground for believing it to be true.  [Citations.]"

Borman also argued that defendants' contention that Borman could not show that Dr. Brown "intended to *deceive*" Borman failed.  (Italics added.) Borman maintained that Dr. Brown had an incentive to have patients "pay

12

cash" for their needed procedures and that "[t]he fact that this backfired causing Plaintiff to instead get the other less expensive procedure does not change the fact that Dr. Brown intended for Ms. Borman to rely on the misrepresentation that her insurance would not cover the brow lift procedure."

Along with other documents, Borman supported her opposition with a declaration in which she stated, "Dr. Brown told me that a brow lift would not be covered by my insurance."

Borman also lodged the deposition testimony of a representative of her insurance company together with the relevant insurance coverage guidelines. In addition, Borman lodged a declaration from a medical expert, Dr. Ahn. In his declaration, Dr. Ahn stated in relevant part:

> "Dr. Brown's statement to Ms. Borman that a brow lift would not be covered by Ms. Borman's insurance was not accurate. Based on my review of [the insurance coverage guidelines] and Ms. Borman's records from NCEC, I believe to a reasonable degree of medical probability that if the proper testing and evaluation had been done by Dr. Brown and NCEC and submitted to Ms. Borman's insurance, it would be determined that a brow lift, or brow ptosis repair, would be functional and *therefore* reasonable and necessary. Therefore, . . . a brow lift should have been covered by her insurance if the proper documentation were submitted to the insurance company by Dr. Brown and NCEC."

### c. *The trial court's ruling granting summary adjudication of Borman's fraud and deceit cause of action*

After further briefing and a hearing, the trial court granted defendants' motion for summary adjudication of Borman's fraud and deceit cause of action. In its order granting summary adjudication of Borman's fraud and deceit cause of action, the trial court *rejected* defendants' contention that

13

Borman would be unable to establish that Dr. Brown knew that it was false to represent that a brow lift would not be covered by insurance. The court reasoned in part:

> "There is . . . a factual dispute between the parties about the absolute nature of Doctor Brown's representation to [Borman]. Doctor Brown claims she only represented that a 'brow lift would *likely* not be covered by insurance,' while [Borman] takes the position that Doctor Brown represented that a 'brow lift would *not* be covered by insurance.' This nuance is a factual dispute. As such, summary adjudication cannot be granted on the element of 'knowledge' or 'reasonable ground for belief' because there is *some* mismatch between the Doctor Brown's reasonable belief (that getting a 'brow lift' approved by an insurance company was *difficult*) and what she allegedly represented (that getting a 'brow lift' approved by an insurance company was *impossible*)."

However, the trial court ruled that defendants *had* demonstrated that Borman would be unable to establish the intent to induce reliance element of her fraud and deceit cause of action and that defendants were therefore entitled to summary adjudication of this cause of action. In support of this conclusion, the trial court reasoned:

> "*The Intent to Induce Reliance Element*. (Underscore omitted.) [Borman] alleges that '[Doctor] Brown made this false statement [about brow lift insurance coverage] for the *purpose* of getting [Borman] to instead consent to the more complicated and *more expensive procedure*.' [Citation.] Doctor Brown has produced evidence to show that the procedure she performed (a 'blepharoplasty' or 'eye lift') was actually *less expensive* than a 'brow lift' would have been. These facts are undisputed. [Citation.] Having made this showing, Doctor Brown points out a flaw in [Borman's] claim – i.e. [Borman] is claiming that Doctor Brown induced her to undergo a procedure that was *less profitable* to Doctor Brown. [Borman] responds that, instead of just inducing a 'more expensive procedure,'

Doctor Brown also had a motive to induce [Borman] into a procedure for which she would *pay cash* rather than use insurance. This argument falls flat because there is no evidence to suggest that [Borman] was induced to become a cash payer. Specifically, it is undisputed that '[Borman's] condition met the requirements for insurance to approve coverage for a blepharoplasty' [citation], and [Borman] herself has alleged that she 'could not afford a procedure that was not covered by insurance' [citation]. As such, the only reasonable inference to be drawn from the facts is that [Borman's] 'blepharoplasty' was covered by her insurance.

"Notably, there is a mismatch in this case between the alleged 'intent to induce reliance' and the resulting 'harm,' which is technically a separate element of a claim for fraud or deceit. If Doctor Brown had made a misstatement about insurance coverage *in order to induce [Borman] to select* a *more expensive procedure*, the harm would be the increased cost of the new procedure. If Doctor Brown had made a misstatement about insurance coverage *in order to induce [Borman] to select* a *procedure for which she would pay cash and forego insurance coverage*, the harm would be the out-of-pocket cash that [Borman] lost compared to what her insurance company would have paid. Here, the harm [Borman] is alleging is that she had the *wrong* procedure and that, by undergoing the 'blepharoplasty' (aka the 'eye lift') that Doctor Brown allegedly induced her to have, she suffered a *medical* harm because it made future procedures more difficult. There is no evidence to suggest that Doctor Brown stood to benefit from inducing [Borman] to undergo the *wrong* procedure.

"For the foregoing reasons, there is no triable issue of fact on the issue of intent to induce reliance, and [Borman's] cause of action for fraud and deceit can be summarily adjudicated on that element."

15

3. *Application*

    a. *Borman's fraud and deceit cause of action alleged liability premised on a theory of negligent misrepresentation*

We begin our analysis of the trial court's order granting summary adjudication by considering Borman's contention that her complaint adequately pled a cause of action for deceit based on negligent misrepresentation. (See *Butte Fire Cases, supra*, 24 Cal.App.5th at p. 1161 [stating that first step in reviewing order granting summary adjudication is to examine "the issues framed by the pleadings, since it is these allegations to which the motion must respond"].)

    i. *The tort of deceit premised on negligent misrepresentation*

"The tort of negligent misrepresentation, [is] a species of the tort of deceit." (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1255 (*Conroy*).) "The elements of a negligent misrepresentation are '(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.' [Citation.] Negligent misrepresentation does not require knowledge of falsity . . . ." (*Tindell v. Murphy* (2018) 22 Cal.App.5th 1239, 1252 (*Tindell*); accord *Hasso v. Hapke* (2014) 227 Cal.App.4th 107, 127; *Apollo Capital Fund LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, 243.)

Some courts, including this court, have stated "there is no requirement of intent to induce reliance," with respect to the tort of negligent misrepresentation. (*Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 Cal.App.4th 821, 845; *Cadlo v. Owens-Illinois, Inc.*

16

(2004) 125 Cal.App.4th 513, 519.)  However, it appears that these courts intended to state that an intent to *defraud* is not a required element of negligent misrepresentation.  This is demonstrated by the fact that both *Tenet* and *Cadlo* rely on *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173–174 for this proposition (*Tenet*, *supra*, at p. 845; *Cadlo*, *supra*, at p. 519 [both citing *Small*]), and the *Small* court appeared to equate intent to *defraud* with intent to induce *reliance*.  (*Small*, *supra*, at pp. 173–174 [" ' "The elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." ' [Citation.]  The tort of negligent misrepresentation does not require scienter or intent to defraud.  [Citation]"].)  In our view, and to clarify, the proper formulation of the elements is that negligent misrepresentation *does* require proof of " 'intent to induce another's reliance on the fact misrepresented,' " (*Tindell*, *supra*, 22 Cal.App.5th at p. 1252.)  However, negligent misrepresentation does *not* require proof of an intent to defraud.  (See *Small*, at pp. 173–174.)

### ii.  *Borman adequately alleged the tort of deceit based on negligent misrepresentation*

Borman's complaint alleged all of the elements of the tort of deceit based on negligent misrepresentation.  With respect to the first two elements—namely, the making of a material misrepresentation without a reasonable basis—Borman alleged, "[Borman] contends that at the time that [Dr. Brown] told [Borman] that a brow[ ]lift would not be covered by [Borman's] insurance, that [Dr. Brown] had no reasonable basis to believe this was true, and this statement was in fact not true."  As to the third element—intent to induce reliance—Borman alleged, "[Dr. Brown] made this

17

false statement for the purpose of getting [Borman] to . . . consent" to a blepharoplasty.[10]  As to justifiable reliance, Borman alleged, "As [Borman] could not afford a procedure that was not covered by insurance and she trusted [Dr. Brown], [Borman] relied on [Dr. Brown's] representations about what would and what would not be covered by insurance and consented to the [b]lepharoplasty."  As to resulting damage, Borman alleged that, after undergoing the blepharoplasty, another doctor informed Borman that "[Dr. Brown] had performed the wrong procedure and that a brow-lift should have been performed instead," and that "[Borman] has now had to undergo one surgery already to correct the problems caused by the surgery performed by Defendants, and expects to have to undergo additional surgeries, and she has had to miss work for the doctor's appointments and surgery and suffer from additional pain and emotional distress."

In a cause of action styled as "Fraud and Deceit," Borman incorporated all of these allegations and alleged further:

> "As discussed above, [Dr. Brown] made misrepresentations to [Borman] that [Dr. Brown] . . . had no reasonable basis to believe to be true . . . with the intention of misleading [Borman], and [Borman] relied on the information as disclosed to her by [Dr. Brown].
>
> " . . . As a direct and proximate result of Defendants' . . . deceit as discussed herein, [Borman] has been injured, has

---

10     Borman's fraud and deceit cause of action also contained allegations supporting liability premised on Dr. Brown having made an *intentional* misrepresentation.  Specifically, Borman alleged that Dr. Brown knew that her statement concerning insurance coverage was false and Borman alleged Dr. Brown made the misrepresentation in order to further her own financial gain.  Borman does not contend on appeal that a triable issue of fact remains on her intentional misrepresentation theory of liability.

18

suffered damages, and continues to suffer damages, and as a result [Borman] is entitled to recover those damages."

Thus, Borman's complaint alleged facts supporting each of the five elements of the tort of deceit based on negligent misrepresentation.[11]

b. *Defendants did not establish that Borman could not prove the elements of negligent misrepresentation*

Next, we consider whether defendants established facts that negated Borman's fraud and deceit cause of action premised on *negligent* misrepresentation. (See *Butte Fire Cases*, *supra*, 24 Cal.App.5th at p. 1161 [second step in reviewing summary adjudication is to "determine whether the moving party has established facts which negate the opponents' claim and justify a judgment in the movant's favor"].)

To begin with, in the trial court, defendants' brief in support of their motion for summary adjudication as to Borman's fraud and deceit cause of action addressed only the elements of *intentional* misrepresentation.[12] Defendants stated that a complaint for "*fraud*," must allege, " 'a *knowingly* false representation by the defendant' " and " 'an intent to *deceive* or induce reliance,' " among other elements. (Italics added.) Yet, a claim of *deceit*

---

[11]    On appeal, Borman also claims that, to the extent the trial court concluded that negligent misrepresentation was not adequately pled in the complaint, the trial court should have granted her motion for leave to amend her complaint. We need not consider this contention given our conclusion that Borman's complaint adequately alleged negligent misrepresentation in the cause of action for fraud and deceit.

[12]    However, on appeal, defendants do not appear to contend that Borman failed to adequately allege a cause of action premised on negligent misrepresentation. Rather, defendants contend that the "the undisputed material facts show that [Borman] could not establish a prima facie case for negligent misrepresentation."

19

premised on *negligent* misrepresentation does not require that the defendant *knowingly* made a false representation or that the defendant intended to *deceive.* (See pt. III.A.3.a.i, *ante* [requiring proof of a misrepresentation "without *reasonable ground* for believing it to be true," and requiring proof of an intent to induce "reliance on the *fact misrepresented*" (italics omitted)].)

With respect to the "knowledge" element, defendants claimed that they were entitled to summary adjudication of Borman's fraud and deceit cause of action because Borman would not be able to establish that Dr. Brown made a statement that Dr. Brown "*knew . . .* not be true," (italics added). However, Borman had to demonstrate merely that Dr. Brown made a misrepresentation without having a *reasonable basis* to believe it was true, insofar as her fraud and deceit cause of action was premised on a negligent misrepresentation theory. Defendants' motion for summary adjudication did not address, and therefore, necessarily did not demonstrate as a matter of law, that Borman would be unable to prove that Dr. Borman made a misrepresentation without having a reasonable basis to believe that it was true.

With respect to the element of "intent to induce reliance," defendants' motion for summary adjudication focused entirely on attempting to demonstrate that Dr. Brown had no financial incentive to perform a blepharoplasty rather than a brow lift. Defendants argued:

> "Dr. Brown would have made more money had she performed a brow lift instead of just [*sic*] a blepharoplasty on [Borman][13] and she would have made more money had she performed a brow lift and a blepharoplasty instead of just a blepharoplasty on Ms. Borman. [Citation.] Since a brow lift would have resulted in Dr. Brown getting more

---

13   Defendants presented evidence in support of this contention, which Borman does not contest on appeal.

money, there is no evidence or reason why Dr. Brown would attempt to induce Plaintiff in getting a blepharoplasty instead of a brow lift. There is absolutely no financial incentive for Dr. Brown or [NCEC] to attempt to induce [Borman] in getting a blepharoplasty instead of a brow lift. [Borman] cannot prove that [Dr. Brown] tried to induce reliance on an alleged misrepresentation since [Dr. Brown] would have had a financial disincentive to do so."

The trial court relied on this argument in concluding that there was no evidence that Dr. Brown intended to induce Borman's reliance on Dr. Brown's statement concerning the lack of insurance coverage for a brow lift. (See pt. III.A.2.c, *ante*.)

However, even assuming that defendants are correct that Dr. Brown lacked any financial incentive to tell Borman that her insurance would not cover a brow lift,[14] this fact does not demonstrate that Dr. Brown did not intend for Borman to rely on her alleged statement that a brow lift would not be covered by Borman's insurance. Stated differently, proof of financial motive is not necessary in order to prove intent to induce reliance. That is because, even assuming that Dr. Brown acted *negligently*, rather than with an intent to foster her own financial interests, Borman still could prove a cause of action for deceit premised on *negligent* misrepresentation. (See

_____

[14] We also question whether evidence that Dr. Brown would have made more money if she had performed a brow lift demonstrated, as a matter of law, that Dr. Brown did not stand to benefit from encouraging Borman to consent to a blepharoplasty, rather than to pursue a brow lift. For example, a reasonable juror could find that Dr. Brown had an incentive to encourage Borman to consent to a procedure that Dr. Brown was certain would be covered by insurance (i.e., a bletharoplasty) rather than performing additional diagnostic testing in the hope of obtaining insurance coverage for a brow lift. In fact, Borman presented evidence tending to support such theory in her opposition to the motion for summary adjudication. (See part III.A.3.c, *post*.)

21

*Moncada v. West Coast Quartz Corp.* (2013) 221 Cal.App.4th 768, 781
[" 'Negligent misrepresentation lacks the element of intent to deceive. Therefore, " '[w]here the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit.' " ' "].)

It is not difficult to conceive of factual scenarios in which Dr. Brown would have no financial incentive to tell Borman that insurance would not cover a brow lift and yet still would have intended for Borman to rely on her statement as to insurance coverage. For example, perhaps Dr. Brown was simply ill-informed with respect to Borman's insurance coverage. Or, perhaps Dr. Brown misdiagnosed Borman, such that Dr. Brown honestly, albeit erroneously, believed that a brow lift would not be covered given Borman's physical condition.[15] In either circumstance, there would be no evidence that Dr. Brown would have "stood to benefit," from her statement that a brow lift would not be covered and yet, a reasonable juror could find that Dr. Brown intended for Borman to rely on her statement.

Moreover, the context in which Dr. Brown allegedly made the statement that Borman's insurance would not cover a brow lift supports the conclusion that a juror could find that Dr. Brown intended for Borman to rely on the statement. It is reasonable to infer that a doctor who tells a patient that a procedure will "correct the problem" for which they are consulting the doctor, but that the procedure will not be covered by insurance, intends for the patient to rely on her statement concerning insurance coverage.[16] (Cf.

---

[15] In opposing the motion for summary adjudication, Borman presented evidence supporting both theories. (See pt. III.A.3.c, *post*.)

[16] We quote from Borman's complaint. While the parties presented conflicting evidence in the summary adjudication proceedings as to whether

*Bock v. Hansen* (2014) 225 Cal.App.4th 215, 231 [homeowners properly stated a cause of action for negligent misrepresentation against insurance adjuster who allegedly falsely told homeowners that insurance policy did not provide coverage for "clean up" aspect of claim]; compare with *Coldwell Banker Residential Brokerage Co. v. Superior Court* (2004) 117 Cal.App.4th 158, 166 (*Coldwell Banker*) [stating that plaintiff could not state a cause of action for "fraud and misrepresentation" against real estate broker related to sale of property in part because "no broker-customer relationship existed" between plaintiff and defendant, and defendant, "as a professional supplier of information in a commercial context, intended to induce [buyer], not [plaintiff], to act in reliance on its representations"].)

Unlike in *Coldwell Banker*, in this case, the professional relationship between Dr. Brown and Borman supports the conclusion that Dr. Brown intended for her patient, Borman, to rely on her statement concerning insurance coverage for a medical procedure that Dr. Brown was discussing performing on Borman. Further, defendants did not present any evidence that put into dispute the context in which the statement was allegedly made. For example, defendants presented no evidence that Dr. Brown made the statement outside of the patient-doctor context, or in jest, or to a third-party. Nor did defendants present any other evidence that demonstrated that Dr. Brown made the statements in some other context from which it might be said that no reasonable juror could find that Dr. Brown intended for Borman to rely on her alleged statement as to the lack of insurance coverage for the brow lift.

---

Dr. Brown told Borman that her insurance would *not* cover the brow lift or instead, that it was *likely* that Borman's insurance would not cover the procedure, defendants did not dispute that Dr. Brown's statement was made directly to Borman during a consultation for a medical problem.

In sum, defendants' evidence showing that Dr. Brown lacked a financial incentive to tell Borman that insurance would not cover a brow lift did not establish as a matter of law that Dr. Brown did not intend for Borman to rely on her statement as to insurance coverage. Since the trial court's determination that Borman would be unable to establish the intent to induce reliance element of her negligent misrepresentation claim was based entirely on its conclusion that "[t]here is no evidence to suggest that Doctor Brown stood to benefit from inducing [Borman] to undergo the *wrong* procedure," the trial court erred in concluding that defendants established that Borman would be unable to prove the "intent to induce reliance" element of negligent misrepresentation.

On appeal, defendants seek to affirm the trial court's summary adjudication order on the basis of an argument rooted in the pleadings. Specifically, defendants argue that Borman alleged in her complaint that Dr. Brown falsely told Borman that a brow lift would not be covered by insurance in order to further Dr. Brown's financial gain. Defendants maintain that "if [Borman] had other allegations to prove intent, she failed to put them in the operative pleading prior to summary adjudication to be addressed or rebutted."[17]

While it is true that Borman's complaint alleged that Dr. Brown "made the misrepresentations that she did to [Borman] for financial gain," such an allegation supported Borman's fraud and deceit cause of action based on *intentional* misrepresentation.[18] (Cf., *Boschma v. Home Loan Center, Inc.*

---

[17] Defendants also raise a series of alternative arguments for affirming the judgment that we address in part III.A.3.d, *post*.

[18] As noted in footnote 10, *ante*, Borman's fraud and deceit cause of action alleged both negligent and intentional misrepresentation theories of liability.

(2011) 198 Cal.App.4th 230, 250 [concluding that allegation of intent to defraud element of fraud claim was adequately supported by allegations tending to show a "nefarious scheme to deceive consumers"].) However, as discussed above, the "tort of negligent misrepresentation, a species of the tort of deceit [citation], does not require intent to defraud." (*Conroy*, *supra*, 45 Cal.4th at p. 1255.) Thus, the mere fact that Borman's complaint contained additional allegations supporting her fraud and deceit claim based on *intentional* misrepresentation does not demonstrate that this allegation was necessary for her to establish her *negligent* misrepresentation claim.[19]

Accordingly, we conclude that defendants failed to demonstrate as a matter of law that Borman would be unable to prove the elements of a fraud and deceit cause of action premised on negligent misrepresentation and that the trial court thus erred in granting defendants' motion for summary adjudication of this cause of action.

> c. *Even assuming defendants carried their prima facie burden of demonstrating that Borman could not prove the intent to induce reliance element, Borman submitted evidence demonstrating a triable issue of fact with respect to this element*

If a summary adjudication motion " 'prima facie justifies a judgment, we determine whether the opposition demonstrates the existence of a triable, material factual issue.' " (*Butte Fire Cases*, *supra*, 24 Cal.App.5th at pp. 1161–1162.) We concluded in part III.A.3.b, *ante*, that defendants *failed* to

---

[19]  For the reasons discussed in part III A.3.a, *ante*, Borman's complaint adequately alleged a fraud and deceit cause of action based on negligent misrepresentation. Defendants do not provide any support for their suggestion that Borman was required to make "other allegations to prove intent" beyond merely alleging the circumstances under which Dr. Borman allegedly told Borman that a brow lift would not be covered by insurance that we detail in part III.A.3.a, *ante*.

carry their prima facie burden.  However, even assuming that defendants had carried their prima facie burden of demonstrating that Borman could not prove that Dr. Brown intended to induce Borman's reliance on her statement concerning insurance coverage, for reasons discussed below, we conclude that Borman submitted evidence opposing the motion for summary adjudication that demonstrates a triable issue of fact with respect to this element.

To begin with, Borman lodged an exhibit containing her medical record from the visit during which Dr. Brown allegedly told her that insurance would not cover a brow lift in which Dr. Brown wrote, "[Borman] [s]tates she cannot do any procedure not covered by insurance."  Borman also lodged an exhibit containing her medical record documenting a second visit with Dr. Brown after Dr. Brown performed the blepharoplasty in which Dr. Brown wrote, "I had explained [during her initial visit with Borman] that a perfect anatomic solution would be to lift the brow . . . , but this would not be covered by insurance.  She was very clear in that she only wanted to do surgery that would be covered by insurance."

Borman also lodged an excerpt from her deposition in which Borman stated that she told Dr. Brown that she "needed [any surgery] to be covered by insurance."

Borman also lodged her declaration that stated:

> "On or about April 20, 2016, I was seen by [Dr. Brown].
> Dr. Brown and I discussed a brow lift on my right eye,
> which Dr. Brown told me would alleviate the problem I was
> having with my peripheral vision.  I thought this was a
> good idea, but Dr. Brown told me that a brow lift would not
> be covered by my insurance.  I imagined that this was an
> expensive procedure, and so I did not believe that I could

afford to have the procedure done. I therefore told Dr. Brown that I did not want the brow lift if it was not going to be covered by my insurance. Dr. Brown told me that she could instead perform a blepharoplasty, which would be covered by my insurance. I therefore consented to the blepharoplasty."

This evidence strongly supports a finding that Dr. Brown was aware that insurance coverage was a critical factor in Borman's decision making, and thus supports the inference Dr. Brown intended to induce Borman's reliance on Dr. Brown's statements concerning that topic.

In addition, Borman provided evidence that supports a finding that Dr. Brown intended for Borman to rely on Brown's statement concerning the lack of insurance coverage for a brow lift, even assuming that defendants are correct that Dr. Brown would have made more money if she had performed a brow lift rather than a blepharoplasty. Specifically, Borman presented expert testimony from which a jury could find that Dr. Brown erroneously believed that a brow lift would not be covered, given Borman's physical condition. Specifically, Dr. Ahn, a board-certified ophthalmologist, stated in his declaration, "[N]either Dr. Brown nor NCEC had performed a proper and complete evaluation of Ms. Borman's brow ptosis, including a visual field test with Ms. Borman's brows (rather than lids) taped up, photos with the brows elevated, and therefore could not make a determination that a brow lift procedure would not have been functional." Dr. Ahn further stated that Dr. Brown's diagnosis of Borman was not "complete," and that the standard of care required that further testing be performed to achieve a "proper diagnosis." This evidence supports a finding that Dr. Brown negligently told Borman that a brow lift would not be covered by insurance.

27

Borman also presented evidence that Dr. Brown was ill-informed with respect to Borman's insurance coverage. Dr. Ahn offered a declaration that stated, "Dr. Brown admitted in her deposition that she did not even know what insurance Ms. Borman had, and there is no question that some insurance, including Medicare, does cover brow[ ]lift procedures when they are functional and therefore reasonable and necessary." Dr. Ahn's testimony provides additional evidence supporting the conclusion that a reasonable juror could find that Dr. Brown intended for Borman to rely on her statement that Borman's insurance would not cover a brow lift, even assuming that Dr. Brown lacked a financial incentive to make such a statement.

Accordingly, we conclude that, even assuming defendants carried their prima facie burden of demonstrating that Borman could not prove that Dr. Brown intended to induce Borman's reliance on her statement concerning insurance coverage, Borman submitted evidence opposing the motion for summary adjudication that demonstrates a triable issue of fact with respect to this element.[20]

> d. *None of the defendants' alternative grounds for affirmance is persuasive*

Defendants present a series of alternative grounds for affirmance. None is persuasive.

To begin with, defendants argue that they demonstrated that Borman would be unable to establish that Dr. Brown made a misstatement without a

---

[20] While Borman's brief also cites to a report drafted by Bloink, the insurance claim specialist, as well as Bloink's deposition testimony, we do not rely on this evidence on appeal, since it was not offered in connection with the summary adjudication proceedings. For the reasons stated in part III.C, *post*, we leave it to the trial court to determine in the first instance the admissibility of Bloink's testimony during proceedings on remand.

reasonable basis, for two reasons. First, defendants argue that, regardless of whether Dr. Brown told Borman that a brow lift would *not* be covered or that it would not *likely* be covered, Dr. Brown had a reasonable basis for making either statement. We reject this argument because Borman presented evidence that Dr. Brown did not have a reasonable basis for telling Borman that her insurance would not cover a brow lift. Specifically, Borman presented evidence concerning Dr. Brown's unfamiliarity with Borman's insurance, the availability of coverage for medically necessary brow lifts under Borman's insurance, and Dr. Brown's alleged failure to perform sufficient diagnostic testing to determine whether a brow lift was medically necessary. (See pt. III.A.3.c, *ante*.)

Second, defendants contend that any factual dispute about whether Dr. Brown told her that a brow lift would not be covered by insurance was immaterial since "[Borman] still would have undergone the blepharoplasty regardless of whether [Dr. Brown] told her it was 'not' covered or 'likely' not covered because both statements are not guarantees that insurance would cover a brow lift." This statement amounts to speculation. Moreover, Borman's declaration directly contradicted defendants' assertion:

> "At no time did Dr. Brown ever tell me that a brow lift might be covered by insurance and that she could submit a request for authorization to my insurance company for the brow lift procedure so that a determination could be made on whether the insurance company would or would not pay for the procedure. Had I known this, I would not have consented to any procedure until the request for authorization for the brow lift had been sent to my insurance and a determination received from my insurance company. From what Dr. Brown had told me, I understood that the brow lift procedure would not be covered by my insurance at all under any circumstance. I did not question what Dr. Brown told me because I trusted her judgment and thought she knew what she was talking about."

29

Thus, defendants were not entitled to summary adjudication on the ground that they demonstrated as a matter of law that Dr. Brown's statement concerning insurance coverage was immaterial.

Defendants also contend that we may affirm the judgment because Borman "waived arguing that [Dr. Brown] made a statement to [Borman] with the intent to induce reliance" (boldface & capitalization omitted) by failing to adequately present such claim on appeal. We are not persuaded. Borman's opening brief adequately raised this issue in separately captioned subsections addressing: the adequacy of her complaint; the "substantial evidence" in the record at the "summary adjudication" proceedings supporting a negligent misrepresentation theory; and the asserted error in the trial court's reasoning. In presenting such argument, Borman expressly states, "It is in the [t]rial [c]ourt's application of the '[i]ntent to [i]nduce [r]eliance [e]lement," where the error lies." In short, Borman did not forfeit her appellate argument due to lack of adequate briefing.

Finally, defendants argue that Borman "waived arguing prejudicial error" (boldface & capitalization omitted) because "[Borman] never argued in her opening brief that it was reasonably probable she would obtain a more favorable jury verdict" had she been able to present her fraud and deceit cause of action premised on a negligent misrepresentation theory to the jury. We are aware of no authority, and defendants cite none, that supports the proposition that a party must demonstrate that it is reasonably probable that the party would obtain a positive result at *trial*, in order to obtain reversal of a *summary adjudication* order where the party has presented evidence demonstrating the existence of a triable issue of fact. The trial court's erroneous granting of defendants' summary adjudication order deprived Borman of the opportunity to proceed to trial based on a fraud and deceit

30

cause of action premised on negligent misrepresentation. The fact that the jury reached a defense verdict on *other* causes of action does not demonstrate a lack of prejudice from this erroneous order, even assuming that the evidence that the jury considered with respect to these other claims overlapped to some degree with the evidence presented in the summary adjudication proceedings related to Borman's fraud and deceit cause of action based upon negligent misrepresentation.[21]

Accordingly, we conclude that none of the alternative grounds that the defendants offer in their brief support affirmance.

B. *We need not address Borman's claim pertaining to the trial court's informed consent jury instruction*

In her opening brief, Borman contended that the trial court's error in refusing to permit her to proceed to trial with a claim for negligent misrepresentation was "compounded by the Trial Court's rejection of [her] modification" of the standard CACI instructions on lack of informed consent during the trial.[22] Borman clarified in her reply brief that she brought this jury instruction claim "to show the full extent of the prejudice," (boldface & capitalization omitted) that she suffered as a result of the trial court's refusal

---

[21] Defendants also claim that Borman cannot establish any "resulting harm" (boldface & capitalization omitted) from Dr. Brown's alleged misstatement. Defendants did not move for summary adjudication on this ground and have not presented any argument on appeal as to why we may nevertheless consider this contention for the first time on appeal. (*Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 335 [stating that, in reviewing summary adjudication orders, Court of Appeal ordinarily does not consider arguments not raised below].) Accordingly, without suggesting that defendants' argument has merit, we decline to consider it.

[22] As noted in footnote 7, *ante*, the record does not contain the proposed modified jury instructions that the trial court refused.

to permit her to bring her negligent misrepresentation claim to trial, by making clear that she was "unable to present her claim to the jury through the informed consent instruction." (Capitalization omitted.) Borman further expressly states in her reply brief that she is "*not* asking this court to vacate the judgment so that she can have a new trial on informed consent but is asking that judgment be vacated so she can have a trial on negligent misrepresentation." (Italics added, capitalization omitted.)

In light of our conclusion that the trial court erred in granting summary adjudication of Borman's cause of action for fraud and deceit[23] and our remand with directions to conduct further proceedings on that cause of action insofar as that cause of action pled a claim for negligent misrepresentation, we need not consider Borman's claim regarding the lack of informed consent jury instruction.

C. *We do not address Borman's claim pertaining to the trial court's exclusion of Bloink's testimony because it is appropriate for the trial court to reconsider the admissibility of such testimony in the first instance on remand*

Borman contends that the trial court erred in precluding Bloink from testifying. Borman maintains that the trial court may have precluded Bloink from testifying because Bloink's "testimony went mainly to the [n]egligent [m]isrepresentation claim, which the [t]rial [c]ourt excluded." In her reply brief, Borman clarifies that her appellate claim as to the exclusion of Bloink's testimony "relate[s] to the negligent misrepresentation claim, not the medical

---

[23] As we explained in part III.A.3.a, *ante*, Borman's fraud and deceit cause of action contains allegations supporting a negligent misrepresentation theory of liability.

32

negligence claim." (Boldface & capitalization omitted.) Borman requests that "if this Court vacates the [j]udgment to allow [Borman] to proceed to trial on the [n]egligent [m]isrepresentation claim, then it should also allow Jacqueline Bloink to testify at this new trial."

While the issue of the admissibility of Bloink's testimony may recur on remand, it is appropriate for the trial court to determine in the first instance whether to permit Bloink's testimony at a future trial of Borman's negligent misrepresentation theory of liability given the changed procedural posture of the case, namely, our reversal of the trial court's summary adjudication of Borman's fraud and deceit cause of action insofar as that cause of action pled a claim for negligent misrepresentation. (See, e.g., *Borrayo v. Avery* (2016) 2 Cal.App.5th 304, 308, 314 [stating that because trial court improperly sustained objection to declaration on ground that physician lacked knowledge of standard of care in United States, the trial court "had no occasion to reach the further issue of whether the declaration lacked sufficient evidentiary value," and "declin[ing] to address that issue in the first instance on appeal"]; cf. *Starview Property, LLC v. Lee* (2019) 41 Cal.App.5th 203, 213 [stating it is " 'advisable to remand the matter to the trial court so that it may rule on the outstanding evidentiary . . . matters in the first instance' "]; *Pratt v. Ferguson* (2016) 3 Cal.App.5th 102, 115 ["trial court should be given the opportunity to hear the evidence and make its discretionary calls in the first instance"]; compare with *Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.* (2018) 23 Cal.App.5th 1129, 1240 ["For purposes of remand, it is also appropriate to provide direction to the Board on *questions of law* likely to recur" (italics added)].)

Accordingly, we decline Borman's request that we direct the trial court to permit Bloink to testify on remand at the trial of Borman's fraud and deceit cause of action. The trial court may consider that issue on remand.

D. *The postjudgment order awarding costs must be reversed*

Borman contends that, to the extent we reverse the judgment, the postjudgment order awarding costs to defendants as prevailing parties must be reversed.[24] We agree. (E.g., *Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1053 ["Our reversal of the judgment necessarily compels the reversal of the award of . . . costs to the prevailing party based on the judgment"].)

IV.

DISPOSITION

The judgment and the postjudgment order awarding costs are reversed.

The order granting summary adjudication of the cause of action pled as "fraud and deceit" is reversed. The matter is remanded to the trial court for the limited purpose of conducting further proceedings on Borman's negligent misrepresentation claim that was alleged as part of her "fraud and deceit" cause of action, and any necessary ancillary proceedings.

At the conclusion of the proceedings on remand, the trial court shall enter a new judgment that reflects the adjudication of Borman's professional negligence, lack of informed consent, and battery causes of action in favor of defendants in the prior proceedings, and the resolution of Borman's fraud and deceit cause of action on remand. After entering a new judgment, the trial

---

24 Defendants state in their brief, "[Defendants do] not disagree that, if judgment is reversed, costs awarded to [defendants] will effectively be vacated pending further proceedings."

court may enter a new postjudgment order on costs that is consistent with the new judgment.

Borman is entitled to costs on appeal.

AARON, J.

WE CONCUR:

HALLER, Acting P. J.

GUERRERO, J.